UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DANYALE SHARRON TUBBS,

        Plaintiff,                Case No. 1:24-cv-1292

v.                              Honorable Jane M. Beckering

UNKNOWN WAKEFIELD et al.,

        Defendants.

_____/

## OPINION

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No.2.)

    Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Haggagi, Weber, Cook, Blackmere, Peek, Alsuraimi, LaMontagne, Knaack, Morrison, Rurka, Cline, Satterlee, and Clemens. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

    Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v.*

*Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Pilarski, Dill, Hack, and Wildfong. The Court will also dismiss, for failure to state a claim, Plaintiff's due process, retaliation, and access to the courts claims against Defendant Jacoutot and Defendant Wakefield. Plaintiff's excessive force claims against Defendants Wakefield and Jacoutot relating to the use of the restraint chair on September 26, 2022, remain in the case.

<u>Discussion</u>

I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Cooper Street Correctional Facility (JCS) in Jackson, Jackson County, Michigan. The events about which he complains, however, occurred at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan and Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan.

Plaintiff sues the following MDOC employees at LRF: Sergeant Unknown Wakefield; Lieutenant Unknown Jacoutot; Captain Unknown Pilarski; and Corrections Officers Unknown Dill, Unknown Hack, and Unknown Wildfong (herein collectively referenced as "the LRF Defendants"). (Compl., ECF No. 1, PageID.1, 4–6, 9–16, 30–32.) Plaintiff also sues the following MDOC employees at LCF: Corrections Officers Unknown Haggagi, Unknown Weber, Unknown Cook, Unknown Blackmere, Unknown Peek, and Unknown Alsuraimi; Lieutenant Unknown LaMontagne; Prisoner Counselor Unknown Knaack; Warden Bryan Morrison; Assistant Deputy Warden Unknown Rurka; Acting Assistant Deputy Warden Unknown Cline; and Sergeants

Unknown Satterlee and Unknown Clemens (herein collectively referenced as "the LCF Defendants"). (*Id.*, PageID.1–2, 6–9, 17–32.)

Plaintiff alleges that prior to the events complained of in this complaint, he had been an active litigant and had filed multiple lawsuits and grievances against MDOC staff members at LRF. (*Id.*, PageID.9.) Plaintiff states that on September 25, 2022, he was taken to segregation from his level-2 housing unit because of an alleged rule violation. (*Id.*) Plaintiff was released to level-4 the following morning without receiving any review on a misconduct. Plaintiff was merely told that he would now be housed in level-4. (*Id.*)

Plaintiff was not given any of his legal or personal property and his requests for his property were ignored by staff. (*Id.*, PageID.10.) Later in the evening on September 26, 2022, Plaintiff was called to the officer's desk by Defendant Jacoutot and Defendant Wakefield, who called Plaintiff "Mr. Legal-beagle" and informed Plaintiff that he had a class II misconduct report to review with him. (*Id.*) As Defendant Wakefield began to read the report, Plaintiff pointed out errors, hoping to have it dismissed at the review stage. (*Id.*) Plaintiff states that Defendant Jacoutot "signaled" to Defendant Wakefield to elevate the ticket to a class I misconduct, which mandated that Plaintiff be confined to toplock in his cell. (*Id.*, PageID.10–11.)

Plaintiff states that the entire interaction made Plaintiff very fearful of being singled out for a campaign of retaliatory harassment. (*Id.*, PageID.11.) Plaintiff contends that he was aware of numerous complaints by other inmates regarding treatment in the level-4 unit. (*Id.*) Consequently, Plaintiff asked to be placed back in temporary segregation pending his misconduct hearing. Defendant Wakefield agreed and Plaintiff was placed in cuffs. However, Defendant Wakefield then ordered Plaintiff returned to his cell in level-4, instructing staff to "drag the f**ker back down to his cell, you're not getting away that easy!" (*Id.*, PageID.12.) Plaintiff stated that he "panicked"

3

collapsing to the floor as a dead weight, and that officers grabbed his legs and continued to drag him toward cell. (*Id.*) As they neared the steps and railing, Plaintiff began yelling hoping that other prisoners would witness the attack on him. (*Id.*) Plaintiff states that officers slammed Plaintiff's body to floor and as he lay on the floor, Defendant Wakefield remained on top of Plaintiff with his knee and body pushing on Plaintiff. Defendant Wakfield then said if Plaintiff stopped yelling he would help him off the floor and walk him to segregation. Plaintiff did not believe Defendant Wakefield but eventually complied, but instead of taking Plaintiff to segregation, Defendant Wakefield ordered Plaintiff placed in a restraint chair, even though Plaintiff was compliant, and his hands remained handcuffed behind his back. (*Id.*, PageID.12–13.) Defendant Wakefield then stated, "Now you can go hide in segregation after I give you this assault ticket." (*Id.*, PageID.13.) Plaintiff states that the other officers who participated in forcing him to the ground were Defendants Dill, Hack, and Wildfong. (*Id.*)

After arriving in segregation, he was kept in the restraint chair without cause for an additional forty minutes at the direction of Defendant Jacoutot, which caused him to suffer excruciating pain in his shoulder, arms, and wrists. (*Id.*) After being released from the restraint chair, he remained in handcuffs and was taken to the shower area. (*Id.*, PageID.14.) Plaintiff was instructed to change into a segregation orange jumpsuit and was seen by an unknown sergeant, who reviewed Plaintiff on a class I misconduct for assault written by Defendant Wakefield. (*Id.*) Plaintiff was then seen by Defendant Pilarski, who asked Plaintiff about the incident. Plaintiff explained that he was the victim of assault, but Defendant Pilarski did not believe Plaintiff and told him that he would have to go back to the level-4 housing unit. (*Id.*) Plaintiff told Defendant Pilarski that he was in fear of retaliation in the level-4 housing unit and asked to be placed in the vacant segregation cell that was being prepared for him. (*Id.*) Defendant Pilarski refused, stating

that Plaintiff could remain in the shower until he got tired of playing games and came out of hiding. (*Id.*) Defendant Pilarski also refused Plaintiff's request for medical care. (*Id.*)

Plaintiff was left in the dirty shower and forced to sleep on the freezing floor, without access to a toilet or to drinkable water. (*Id.*) During rounds the next morning, administrative staff ordered the first shift segregation officers to place Plaintiff in a segregation cell. (*Id.*, PageID.15.) Plaintiff filed grievances on Defendants Wakefield and "John Does" for excessive use of force and retaliation. (*Id.*)

During his stay in segregation, Defendants Wakefield, Dill, Hack, and Wildfong wrote false statements to cover up their excessive use of force. The hearing officer failed to acknowledge the violations of Plaintiff's due process rights and he was found guilty. Plaintiff's subsequent appeal was also denied. (*Id.*) Plaintiff also states that his due process rights were violated by Defendant Pilarski's involvement in the grievance process with respect to Plaintiff's grievance on the September 26, 2022, incident. (*Id.*)

Plaintiff states that in October of 2022, he gave his amended complaint on *Tubbs v. Cunningham et al.*, Case No. 1:22-cv-588, to the Prisoner Counselor for the segregation unit to be copied. Later the same day, Plaintiff was informed that he would be transferred to another prison the following day. (*Id.*, PageID.16.) Plaintiff states that his documents and copies had not been returned at this point. (*Id.*)

On October 14, 2022, Plaintiff was transferred to the Saginaw Correctional Facility (SRF). (*Id.*) Plaintiff states that he was retaliated against at SRF because of his pending lawsuits against staff at LRF. (*Id.*, PageID.17.) Plaintiff filed numerous grievances against staff at SRF for the destruction and theft of legal papers, unjust confinement in his cell, loss of his job detail, and harassing body and cell searches. (*Id.*) Plaintiff then acquired representation from the Roderick

and Solange MacArthur Justice Center for one of his lawsuits. This firm contacted the Warden at SRF and the MDOC Director, which led to Plaintiff being transferred to LCF. (*Id.*)

Plaintiff states that staff at LCF labeled him as "the inmate that sues staff," which resulted in a target being placed on his back. (*Id.*) Plaintiff states that he had to rely on staff at LCF to provide photocopies and to send out his legal mail, and that staff violated his rights because of his litigation activities. (*Id.*, PageID.18.) Plaintiff filed grievances on the law librarian and on the medical records department. (*Id.*) Plaintiff brought his complaints to the attention of Defendant Knaak, who disregarded them. (*Id.*) Plaintiff then contacted his legal counsel, who arranged to meet with him on July 31, 2023. (*Id.*) However, on July 20, 2023, Defendants Haggagi and Weber ransacked Plaintiff's room and spilled a large amount of liquid on his legal papers, stole legal documents, and claimed to find contraband in Plaintiff's area of control. (*Id.*, PageID.19.) Defendant Weber wrote a class III misconduct on Plaintiff, even though the supposed contraband had been present during all of the prior cell searches he and other staff had conducted. (*Id.*) Plaintiff refused to accept guilt and Defendant Knaak subsequently found him guilty and sentenced him to four days on top lock, which was to begin on the date of Plaintiff's scheduled appointment with his attorney. (*Id.*, PageID.20.) Plaintiff believes that the entire thing was planned in order to prevent him from meeting with his attorney. (*Id.*)

Defendant Knaak had Plaintiff moved to the F-2 dorms on August 1, 2023, which had a reputation for having stricter conditions, "foul" dorm officers, and no regular counselor available. (*Id.*) This caused Plaintiff to lose his job detail. (*Id.*) On August 4, 2023, Plaintiff went to the officer's desk to ask for a grievance form. Defendant Blackmere signaled to Defendant Cook to hand Plaintiff a couple of grievance forms. (*Id.*) Defendant Cook then asked Plaintiff why he needed a form and Plaintiff replied that he was going to file a grievance on the E-2 Prisoner

Counselor and Officers. (*Id.*, PageID.20–21.) Defendant Cook then claimed that there were no forms available, so Plaintiff asked to get grievance forms from the unit at the other end of the dorm. (*Id.*, PageID.21.) Defendant Cook denied Plaintiff's request and ordered him to leave the area. (*Id.*)

Plaintiff later obtained a grievance form from another prisoner and completed it in the law library so that Defendant Cook would not see him doing it. (*Id.*) While in the law library, Plaintiff noticed the officer assigned to the area staring at him while talking on the phone. (*Id.*) As Plaintiff was returning to his cell, Defendants Cook and Blackmere stood behind him. (*Id.*) Plaintiff was fearful and went back into the hallway in view of the security cameras and other inmates. (*Id.*, PageID.21–22.) Defendant Cook then confiscated the contents of his bag and left the area with Plaintiff walking behind complaining that it was illegal to take his legal papers. (*Id.*, PageID.22.) Plaintiff asked to speak to a sergeant, but Defendants Cook and Blackmere ignored his request. (*Id.*) Plaintiff then phoned his counsel and when Defendant Cook learned that he had contacted his attorney, he returned the legal papers, although Plaintiff later discovered that some had been stolen. (*Id.*) Plaintiff claims that this resulted in his pending case being dismissed on summary judgment. (*Id.*)

Plaintiff filed a grievance and sent kites to Defendants Morrison, Rurka, and Cline about the conduct of staff at LCF. (*Id.*) On October 12, 2023, Plaintiff was escorted to segregation for a strip search due to being in an unauthorized area. (*Id.*) Plaintiff was made to wait in the stripping area and Defendant Satterlee reviewed Plaintiff on a class II "out of place" misconduct. (*Id.*, PageID.23.) Plaintiff states that an unknown officer told him that he was not going anywhere that evening and Plaintiff was improperly kept in segregation without cause. (*Id.*) Plaintiff states that his legal papers were not being placed under seal or secured while he was in segregation. (*Id.*)

Plaintiff states that the misconduct charge was eventually dismissed, and his legal papers were returned to him, although Plaintiff later discovered that numerous papers had been stolen while he was wrongfully held in segregation. (*Id.*, PageID.24.)

After being released from segregation on October 18, 2023, Plaintiff was allowed access to the yard, use of the microwave, and use of the phone on first shift, but when Defendant Cook arrived on second shift, he denied Plaintiff access to the bathroom and other areas. Defendant Cook also wrote a misconduct on Plaintiff for using the bathroom. (*Id.*) Defendant Cook then conspired with Defendant Peek to keep Plaintiff unjustly confined to his cell. On October 19, 2023, Defendant Peek refused to allow Plaintiff to leave the dorm to go to breakfast and threatened to assault Plaintiff and send him to segregation if Plaintiff stepped outside the building. (*Id.*)

Plaintiff states that he felt he was being treated unjustly and left the dorms without staff authorization in order to go to the control center. (*Id.*, PageID.25.) Plaintiff spoke to Defendant Cline and an unknown ranking officer and asked to be placed in protective custody to get away from the officers who were retaliating against him. (*Id.*) Defendant Rurka arrived and when Plaintiff explained his request, Defendant Rurka ordered Plaintiff to return to his cell. (*Id.*, PageID.26.) Plaintiff then noticed that Defendant Peek was in the control center. (*Id.*) Plaintiff then allowed himself to be placed in cuffs and escorted to segregation. (*Id.*) Plaintiff's class I misconduct was subsequently downgraded to a class II misconduct, and he was found guilty of being out of place. (*Id.*, PageID.27.)

Plaintiff states that he did not receive a copy of the findings or sanctions related to his class II and III misconducts until he was being transferred from LCF to the G. Robert Cotton Correctional Facility (JCF). (*Id.*, PageID.28.) Once Plaintiff arrived at JCF, he saw that he had been given 5-days on toplock and 10-days loss of privileges and that it had been miscalculated to

make him serve 20-days on sanctions. (*Id.*) Plaintiff asserts that he arrived at JCF on sanctions so that he could not contact his family to let them know of the transfer. (*Id.*)

## II.    Misjoinder

Plaintiff names Defendants at two separate prisons. At this juncture, the Court will address whether Plaintiff's claims are properly joined.

### A.    Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v.*

*Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied); *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("Unrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). A district judge necessarily has considerable discretion in applying Rules 18 and 20. The rules 'operate[ ] independently' because Rule 20 contains limitations that Rule 18 does not, and the Rule 20 inquiry comes first.").

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder in a prisoner civil rights action undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against
> Defendant 1 should not be joined with unrelated Claim B against Defendant 2.
> Unrelated claims against different defendants belong in different suits, not only to
> prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s]

> but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Furthermore, he would avoid the consequences of filing at least three actions with all claims dismissed as meritless, frivolous, or for failure to state a claim. Courts are obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Wakefield is the first Defendant listed in the caption of the complaint, in the listing of parties, and in Plaintiff's factual allegations.[1] (See Compl., ECF No. 1, PageID.1, 4, 10.) On September 26, 2022, Defendants Wakefield and Jacoutot were present during Wakefield's review of a Class II misconduct with Plaintiff. During the review, Defendant Wakefield, allegedly based on a signal from Defendant Jacoutot, elevated Plaintiff's Class II misconduct to a Class I misconduct. Fearing that the two Defendants were setting Plaintiff up, he asked to be placed in segregation rather than returned to his Level IV cell. That request ultimately led to an alleged

---

[1] The analysis of joinder must start somewhere. By accepting the first-named Defendant and the factual allegations against the first-named Defendant as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

excessive use of force, constitutionally inappropriate conditions of confinement in segregation, and denial of due process by Defendants Wakefield, Jacoutot, Pilarski, Dill, Hack, and Wildfong at the end of September, 2022. Those allegations are plainly related and arise out of the same events at LRF and involve common questions of law and fact.

Turning to Rule 18, Plaintiff could join to these claims any other claims against the LRF Defendants. Fed. R. Civ. P. 18(a) ("A party asserting a claim ... may join, as independent or alternative claims, as many claims as it has against an opposing party."). Plaintiff suggests the suffered other wrongs during his stay in segregation at LRF until he was transferred out in mid-October, 2022. Claims against Defendants Wakefield, Jacoutot, Pilarski, Dill, Hack, and Wildfong from that period are also properly joined under Rule 18.

But Plaintiff has not alleged any facts to support an inference that his claims against Defendants from other facilities, including his claims against Defendants Haggagi, Weber, Cook, Blackmere, Peek, Alsuraimi, LaMontagne, Knaack, Morrison, Rurka, Cline, Satterlee, and Clemens from LCF, are related to the LRF claims or arise out of the same transactions and occurrences as the LRF claims. Plaintiff has, therefore, improperly joined Defendants Haggagi, Weber, Cook, Blackmere, Peek, Alsuraimi, LaMontagne, Knaack, Morrison, Rurka, Cline, Satterlee, and Clemens.

### B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined the LCF Defendants, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo*

*Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV, Inc.*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). The first allegations Plaintiff asserts against LCF Defendants is that on July 20, 2023, Defendants Haggagi and Weber ransacked Plaintiff's room

and spilled a large amount of liquid on his legal papers, stole legal documents, and claimed to find contraband in Plaintiff's area of control. (ECF No. 1, PageID.19.) Therefore, Plaintiff's causes of action against LCF Defendants accrued no more than two years ago. Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against the misjoined LCF Defendants. Therefore, Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if his claims against the misjoined LCF Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Haggagi, Weber, Cook, Blackmere, Peek, Alsuraimi, LaMontagne, Knaack, Morrison, Rurka, Cline, Satterlee, and Clemens because they are misjoined. The Court will dismiss Plaintiff's claims against the LCF Defendants without prejudice to the institution of a new, separate lawsuit or lawsuits.[2]

## III.    Failure to State a Claim

With regard to the remaining Defendants in this case, Plaintiff claims that Defendants Wakefield, Jacoutot, Pilarski, Dill, Hack, and Wildfong subjected him to excessive force in violation of the Eighth Amendment, and that all of the named Defendants subjected him to conditions which constituted cruel and unusual punishment. Plaintiff also asserts that all of the named Defendants retaliated against him in violation of the First Amendment and deprived him of

---

[2] If Plaintiff wishes to proceed with his claims against one or more of the misjoined Defendants, he may do so by filing new civil action(s) on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed in forma pauperis. As fully discussed in this Opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration at a particular correctional facility does mean that all claims arising out of these events are properly joined.

due process in violation of the Fourteenth Amendment. Plaintiff seeks compensatory and punitive damages.

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Due Process

Plaintiff contends that the LRF Defendants violated his rights under the Fourteenth Amendment's Due Process Clause in connection with the misconduct reports written against him. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical

and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, at the end of September 2022, Defendants Wakefield and Jacoutot were present during Wakefield's review with Plaintiff of a Class II misconduct that was elevated to a Class I misconduct.[3] We know almost nothing about the misconduct that was being reviewed except what appears in the subsequent assault and battery misconduct report and the hearing report for that subsequent misconduct. According to Defendant Wakefield, after elevating the misconduct to a Class I, it was his intention to return Plaintiff to his Level IV cell on toplock until the misconduct could be heard by a hearing officer. (Misconduct Report, ECF No. 1-3, PageID.43.) Defendant

---

[3] Plaintiff attaches to his complaint a Step I grievance response form that indicates the charged misconduct was bribery of an employee written by a non-party corrections officer. (Grievance Response Form, ECF No. 1-1, PageID.36.) He also attaches a misconduct report and a page from the misconduct hearing report relating to the assault and battery charge that followed his resistance during the attempted return of Plaintiff to his Level IV cell. (Misconduct Report, ECF No. 1-3, PageID.43; Misconduct Hr'g Report, ECF No. 1-2, PageID.41.)

The Court may consider documents that are attached to a pro se complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g., Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to the plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)). The Court will generally accept as true the statements that Plaintiff makes in the documents he has attached to the complaint. The Court will generally not accept as true statements made by others in the documents Plaintiff attaches to the complaint except to the extent that Plaintiff relies on the truth of those statements in his complaint. "When a document attached to the complaint contradicts the allegations, the document trumps the allegations . . . [if the] document . . .'utterly discredit[s]' the allegations." *In re Flint Water Cases*, 960 F.3d 303, 329 (6th Cir. 2020).

Wakefield's description—at least with regard to the events leading up to Plaintiff being handcuffed with the intention of returning him to his Level IV cell—is not in any way inconsistent with Plaintiff's account. (Compl., ECF No. 1, PageID.10–12.) It appears that Plaintiff challenges the process afforded him with regard to the initial review of the bribery misconduct report and the hearing on the assault and battery misconduct report.

However, Plaintiff does not allege that either of these misconducts impacted the duration of his sentence, and he cannot allege this because the sanctions available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence). And, sanctions available for a Class I misconduct—no more than 10 days of punitive segregation, no more than 30 days of toplock, and no more than 30 days loss of privileges[4]—do not constitute "atypical and significant hardship[s]," as contemplated by *Sandin*. *Cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs).[5]

---

[4] For a single offense, "[t]he most severe sanctions that Plaintiff might have faced were up to 10 days in punitive segregation or up to 30 days' toplock and up to 30 days' loss of privileges." *Watkins v. Martin*, No. 1:19-cv-797, 2020 WL 64189, at *5 (W.D. Mich. Jan. 7, 2020) (citing MDOC Policy Directive 03.03.105, Prisoner Discipline, Attachment D). Plaintiff reports that he received a disciplinary sanction of 20 days of detention in segregation and 60 days loss of privileges, (Compl., ECF No. 1, PageID.15, ¶ 45), suggesting that the hearing officer gave sanctions for two offenses, the second likely being the bribery charge.

[5] A stay longer than 30 days in segregation is not considered an atypical or significant hardship. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Therefore, it defies logic to suggest that the lesser penalty of loss of privileges or toplock for that duration could be atypical or significant. Sixth Circuit authority bears that out. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th

Therefore, Plaintiff fails to state a procedural due process claim regarding the misconduct proceedings he mentions in his complaint.

### B.    Retaliation

Plaintiff asserts that LRF Defendants retaliated against him for his litigation activities. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory

---

Cir. 2004) (holding that a fourteen-day loss of privileges sanction did not implicate the due process clause); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (nine-month loss of package privileges did not impose an atypical and significant hardship); *Miles v. Helinski*, No. 20-1279, 2021 WL 1238562, at *4 (6th Cir. Jan. 29, 2021) (five days' toplock and five days' loss of privileges fails to state a due process claim); *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) (concluding that "thirty days' loss of privileges . . . did not implicate a protected liberty interest"); *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan. 24, 2017) (thirty days' toplock and thirty days' loss of privileges "does not amount to an 'atypical and significant hardship'").

motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"

*Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir.

1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints

screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no

concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations

omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on

the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A

screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

    In support of his retaliation claims, Plaintiff alleges that prior to the events complained of

in this complaint, he had been an active litigant and had filed multiple lawsuits and grievances

against MDOC staff members at LRF. (ECF No. 1, PageID.9.) With respect to the first element of

a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances

against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252,

265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here,

Plaintiff references filing grievances and lawsuits prior to the events at issue in the complaint.

Although Plaintiff offers no factual allegations to support an inference that the grievances and

lawsuits were non-frivolous, at this stage of the proceedings, Plaintiff's allegations suffice to show

that he engaged in protected conduct.[6]

---

[6] It is noteworthy that at least some of Plaintiff's litigation activity was not protected conduct. For example, In *Tubbs v. Washington*, No. 1:19-cv-322, 2019 WL 6271096, at *6 (W.D. Mich. Nov. 25, 2019), this Court determined that Plaintiff had no good-faith basis for an appeal, i.e., that his claims were meritless and that any possible appeal would be frivolous. *See Coppedge v. United States*, 369 U.S. 438, 445 (1962) (holding that good faith under § 1915(a) is demonstrated when the party seeks appellate review of any issue that is not frivolous). This Court and the Sixth Circuit Court of Appeals reached the same conclusion in *Tubbs v. Cunningham*, No. 1:22-cv-588, 2023 WL 8805672, at *2 (W.D. Mich. Dec. 20, 2023), and *Tubbs v. Cunningham*, No. 24-1050 (6th Cir. June 5, 2024).

Plaintiff's factual allegations against the LRF Defendants appear in ¶¶ 31–48 of Plaintiff's complaint. Plaintiff offers allegations of many wrongs—or "adverse actions"—he suffered at LRF, but the wrongs he attributes to the six LRF Defendants are not numerous. First, Defendant Jacoutot "signaled to Sgt. Wakefield to elevate [Plaintiff's] 'Class-2' misconduct report into a 'Class-1' misconduct." (Compl., ECF No. 1, PageID.10.) Next, after Plaintiff was handcuffed, Defendants Wakefield and Jacoutot directed Plaintiff away from his preferred destination of segregation to return him to serve toplock time in his Level IV cell. (*Id*., PageID.12.) Then, after Plaintiff resisted and committed "assault and battery," he was subjected to the use of force by Wakefield, Jacoutot, Dill, Hack, and Wildfong to compel his compliance. (*Id*., PageID.12–13.) At that point, Plaintiff's assault and battery misconduct warranted his transport to segregation. Defendant Wakefield ordered the transport to occur in a restraint chair even though, according to Plaintiff, he was "compliant and non-resisting." (*Id*., PageID.13.) Plaintiff claims that Defendant Jacoutot ordered that Plaintiff remain in the restraint chair for 40 minutes. (*Id*.) Plaintiff contends that Defendant Pilarski made Plaintiff stay in the shower area of segregation until the next morning rather than placing Plaintiff in an available segregation cell. (*Id*., PageID.14.) Thereafter, Plaintiff claims that Defendants Wakefield, Dill, Hack, and Wildfong took adverse action against Plaintiff again in the context of their allegedly false statements in connection with the assault and battery misconduct proceedings. (*Id*., PageID.15.) The Court concludes that the wrongs, either separately or considered in combination, might deter a person of ordinary firmness from participating in protected conduct.

Plaintiff's retaliation claims fall apart, however, at the third step. The only hint that there might be any connection between Plaintiff's grievances and lawsuits and the events described in Plaintiff's complaint is Defendant Wakefield's reference to Plaintiff as "Mr. Legal-beagle" before

Wakefield reviewed Plaintiff on the bribery misconduct. With respect to Defendants Jacoutot, Pilarski, Dill, Hack, and Wildfong, Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that the actions of Defendants Jacoutot, Pilarski, Dill, Hack, and Wildfong were motivated by any of his protected conduct. Moreover, Plaintiff's vague assertion that Defendant Jacoutot "signaled" to Defendant Wakefield to elevate the misconduct to a class I is entirely conclusory. Plaintiff fails to allege any facts regarding Defendant Jacoutot's actions in that regard. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Nor does Plaintiff allege any facts showing that Defendants Jacoutot, Pilarski, Dill, Hack, or Wildfong had a retaliatory motive. He merely concludes that because he engaged in litigation activity in the period before Defendants' actions, their actions must have been motivated by his grievances. But Plaintiff does not allege facts that support an inference that the alleged adverse action was temporally proximate to his protected conduct. Moreover, even if Plaintiff made such allegations, the Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is apparently a prolific filer of grievances and lawsuits. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Because Plaintiff alleges no facts to support an inference of any retaliatory motive with regard to Defendants Jacoutot, Pilarski, Dill, Hack, or Willfong, he has failed to state a retaliation claim against them.

With respect to Defendant Wakefield, Plaintiff alleges that Defendant Wakefield called him "Mr. Legal-beagle" (ECF No. 1, PageID.10), and then took adverse action against him by, according to Plaintiff using excessive force and/or unnecessarily restraining Plaintiff in a restraint chair. (*Id.*, PageID.12–13.) Plaintiff's allegations indicate that he was a prolific filer of grievances and lawsuits and that he was known for that in the MDOC. (*Id.*, PageID.9, ¶¶ 31–32.) Defendant Wakefield's reference to Plaintiff as a "legal beagle" is not derogatory. The Oxford English Dictionary defines "legal beagle" as "a lawyer; spec. one who is keen and astute." Legal beagle, Oxford English Dictionary, https://www.oed.com/ (enter "legal beagle") (last visited April 12, 2025). Perhaps Wakefield intended the phrase to refer to Plaintiff's litigation successes; perhaps Wakefield intended the phrase to refer, tongue in cheek, to Plaintiff litigation failures; or perhaps Wakefield intended the phrase ironically, as a commentary on Plaintiff's charged misconduct for bribery. In any event, the reference is insufficient to support an inference that Defendant Wakefield's subsequent actions were motivated by a retaliatory animus for Plaintiff's protected conduct.

The only other fact that Plaintiff offers to support his contention that Defendant Wakefield's actions were impermissibly retaliatory is Plaintiff's claim that Defendant Wakefield authored a false misconduct report against Plaintiff. Plaintiff's allegations regarding Defendant Wakefield, though not particularly strong, at least permit the inference that Plaintiff's protected conduct may have played some role in the use of excessive force.

The Sixth Circuit has held that a prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). However, as the Sixth Circuit

subsequently qualified in *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014), not every factual

finding is entitled to preclusive effect. Instead,

> the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. [*Peterson*, 714 F.3d] at 916–17. It likewise turns on the court's "sense of justice and equity," *Blonder-Tongue Labs., v. Univ. of Ill. Found.*, 402 U.S. 313, 334 (1971), which may require a case-by-case analysis of surrounding circumstances.

*Roberson*, 770 F.3d at 404–05.

In *Maben v. Thelen*, the Sixth Circuit further clarified the limitations of the preclusion

doctrine, as follows:

> To determine whether we must give preclusive effect to "factfinding from Michigan prison hearings," we look to four requirements, all of which must be met: (1) the state agency "act[ed] in a 'judicial capacity'"; (2) the hearing officer "resolved a disputed issue of fact that was properly before it"; (3) the prisoner "had an adequate opportunity to litigate the factual dispute"; and, (4) if these other three requirements are met, we must "give the agency's finding of fact the same preclusive effect it would be given in state courts." *Peterson v. Johnson*, 714 F.3d 905, 911–13 (6th Cir. 2013) (internal citation and quotation marks omitted).

> In *Peterson*, the Court considered, as a matter of first impression, whether a hearing officer's factual determination at a Michigan major misconduct hearing has preclusive effect in litigation brought by a prisoner under § 1983. *Id.* at 908, 911. The Court concluded that, because all four requirements were met, the "hearing officer's *factual* finding that [the prisoner] was the one who grabbed [the officer's] hand precludes a contrary finding in federal court." *Id.* at 917. In *Roberson v. Torres*, the Court considered the same issue, and identified the four requirements listed above. 770 F.3d 398, 403–04 (6th Cir. 2014). The Court said that *Peterson* does not mean that "any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect." *Id.* at 404. "*Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing." *Id.*

> Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so— not just in theory, but in practice. It likewise turns on the court's sense of justice and equity, which may require a case-by-case analysis of surrounding circumstances.

*Id.* at 404–05 (internal citations and quotation marks omitted). The Court declined to decide the preclusion question, and remanded the case to the district court to consider the argument for the first time. *Id.* at 405. The Court instructed the district court to "give particular attention to the fairness and accuracy of the factual findings made by the major-misconduct hearing officer." *Id.* The Court advised that "[n]umerous inquiries may be relevant to the district court's analysis," like "why the hearing officer refused to review the alleged video of the incident, whether the hearing officer provided a sufficient and reasonable basis for her factual findings, and whether the testimony of other witnesses corroborated the accounts provided by either [the prisoner] or [the officer]." *Id.* at 405.

*Maben*, 887 F. 3d at 259.

Here, in the context of a hearing on a major misconduct before a judicial officer, Plaintiff argued his position and presented his own written statement. (ECF No. 1-2, PageID.41.) Critically, in Plaintiff's statement to the ALJ and in his complaint allegations, Plaintiff acknowledges that he actively resisted Defendant Wakefield once Plaintiff learned he would be returned to his Level IV cell rather than segregation. Plaintiff effectively admits the assault and battery. The Court cannot accept as true Plaintiff's conclusory statement that the misconduct was false when the Court is bound by the hearing officer's determination to the contrary and when Plaintiff's factual statements during the hearing and in his complaint contradict his conclusory statement.

ALJ Schneider concluded as follows:

> Based on the report, video, and the prisoner's admission, ALJ finds that the prisoner pushed back against the sergeant, locked his legs, and sat down during an out-of-cell escort. That was physical resistance with staff. The contact was nonconsensual because the sergeant was conducting a hands-on escort and did not agree to the prisoner pushing, locking his legs, and preventing the escort. The contact was intentional because the prisoner directed his body force in opposition to the sergeant. The contact was done to physically abuse the sergeant because it was extremely offensive and insulting to push the sergeant, lock his legs, and resist the escort. The confrontation was not mutual because the sergeant was just performing his job duties and escorting the prisoner, and he did not agree to a confrontation with the prisoner. Finally, self-defense does not apply.

(*Id.*) It is not the conclusion of guilt, but the "specific factual findings" that are given preclusive effect. *Roberson*, 770 F.3d at 404–05. Here, the specific factual findings of ALJ Theut were made

with the "judicial-type protections" necessary for preclusion under Michigan law. Precluding Plaintiff from relitigating the same disputed fact now comports with the Court's "sense of justice and equity." Thus, all of the factors identified in *Peterson*, *Roberson*, and *Maben*—including this Court's sense of justice and equity—support giving the hearing officer's factual findings preclusive effect. And the findings undercut any possible claim that the misconduct report was false.

Additionally, Plaintiff's assault and battery of Defendant Wakefield provides a motivation for Wakefield's subsequent actions that is more proximate in time than the "legal beagle" reference. In short, the Court concludes that Plaintiff has failed to allege sufficient facts to support an inference that either Defendant Wakefield's alleged excessive use of force or his unnecessary use of the restraint chair was motivated by retaliation for Plaintiff's protected conduct. At best, Defendant Wakefield's brief reference to Plaintiff as a "legal beagle" is ambiguous. Essentially, Plaintiff asks this Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim. Accordingly, any claim for First Amendment retaliation against Defendant Wakefield is properly dismissed.

### C.    Eighth Amendment

Plaintiff claims that LRF Defendants violated his rights under the Eighth Amendment.

#### 1.    Excessive force

Plaintiff claims that Defendants used excessive force against him on September 26, 2022, when Defendants Wakefield, Dill, Hack, and Wildfong forced Plaintiff's body to the floor and Defendant Wakefield pinned Plaintiff with his body and knee and then placed Plaintiff in a restraint chair even though Plaintiff was compliant. (ECF No. 1, PageID.12–13.) Plaintiff also claims that

Defendant Jacoutot kept him in the restraint chair without cause for an additional forty minutes. (*Id.*, PageID.13.)

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981); *see also Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim involving the use of restraints must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

Restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy,* 559 U.S. 34, 37–39 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by

the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953–54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

Plaintiff concedes that he was refusing to obey a direct order to return to his cell and was refusing to walk at the time that he was taken to the floor. Plaintiff does not allege that he suffered any injuries as a result of being pinned to the floor, or that it lasted for an extended period of time. The Court notes that although not determinative, the "absence of serious injury" is relevant to the Eighth Amendment inquiry. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citing *Hudson*, 503 U.S. at 7). The Court concludes that with regard to the alleged conduct of Defendants Wakefield, Dill, Hack, and Wildfong in forcing Plaintiff to the floor and pinning him there, Plaintiff has failed to allege facts that rise to the level of an Eighth Amendment violation.

However, Plaintiff alleges that when Defendant Wakefield ordered Plaintiff placed in a restraint chair, Plaintiff was compliant with his hands cuffed behind his back. (ECF No. 1, PageID.12–13.) In addition, Plaintiff alleges that Defendant Jacoutot ordered that Plaintiff remain in the chair for forty minutes after he arrived in segregation without any justification. (ECF No. 1, PageID.12–13.) Accepting the truth of Plaintiff's allegations, as the Court is required to do at this stage, the Court concludes that Plaintiff's excessive force claims against Defendants Wakefield and Jacoutot regarding the use of restraints are not properly dismissed.

### 1.    Cruel and unusual punishment

Plaintiff asserts that when he refused to return to his cell in the level-4 housing unit, Defendant Pilarski left him in a dirty shower overnight, so that Plaintiff was forced to sleep on a freezing floor, without access to a toilet or to drinkable water until the next morning when administrative staff ordered the first shift segregation officers to place Plaintiff in a segregation cell. (ECF No. 1, PageID.15.)

Initially, the Court notes that according to his complaint, Plaintiff was given the choice to return to his cell in level-4 and thus could have avoided sleeping in the shower. Moreover, allegations about temporary deprivations of this nature, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim.") (internal quotation omitted)). Plaintiff's assertion that he spent one night in the shower unit does not rise to the level of an Eighth Amendment violation.

### D.    Access to the courts

Finally, the Court construes Plaintiff's complaint as asserting an access to the courts claim. Plaintiff states that in October of 2022, he gave his amended complaint on *Tubbs v. Cunningham et al.*, Case No. 1:22-cv-588, to the Prisoner Counselor for the segregation unit to be copied. Later the same day, Plaintiff was informed that he would be transferred to another prison the following day. (*Id.*, PageID.16.) Plaintiff's documents and copies had not been returned at this point. (*Id.*)

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states

must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

Plaintiff does not allege that any of the six named LRF Defendants had any involvement in the alleged withholding of Plaintiff's documents or copies. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez*

*v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff does not allege any facts that support an inference that the named Defendants were involved in the alleged interference with his access to the courts. Accordingly, his allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

## <u>Conclusion</u>

Pursuant to Rule 21, the Court determines that Defendants Haggagi, Weber, Cook, Blackmere, Peek, Alsuraimi, LaMontagne, Knaack, Morrison, Rurka, Cline, Satterlee, and Clemens will be dropped as misjoined and the Court will dismiss without prejudice pursuant to Rule 21. Having conducted the preliminary review required by the PLRA, the Court will dismiss, for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), Defendants Pilarski, Dill, Hack, and Wildfong. The Court will also dismiss, for failure to state a claim, Plaintiff's due process, retaliation, and access to the courts claims against Defendants Jacoutot and Wakefield. Plaintiff's excessive force claims against Defendants Wakefield and Jacoutot remain in the case.

An Order consistent with this Opinion will be entered.

Dated: __April 18, 2025__                    /s/ Jane M. Beckering
                                             Jane M. Beckering
                                             United States District Judge